MANDRY ET AL., RESPONDENTS, v. LA COMPAÑÍA AZUCARERA DEL ESTE ET AL., APPELLANTS.

APPEAL from the District Court of San Juan, Section 2.

No. 822.—Decided February 18, 1913.

CONTRACT OF SALE—MISTAKE OF FACT—RESTITUTION—FRAUD—INTEREST.—The plaintiffs sold a plantation to the Compañía Azucarera del Este for the sum of $138,585.30. It was agreed that from this amount there should be deducted the amount which the plaintiffs should be shown to owe the Banco Territorial y Agrícola. According to an accounting made by the said bank this debt amounted to $54,032.33. Some months later the purchasing company canceled the mortgage debt owing to the bank, paying it $27,643.07, and created a larger mortgage on the same property in favor of the bank to secure a loan obtained therefrom. The plaintiffs claim restitution of the sum of $26,389.20 with interest thereon from October 30, 1900, because their debt to the bank at the time of the sale was only $27,643.07. It was held that although it has not been shown that fraud was practiced by the Compañía Azucarera del Este, the contract of sale was executed under a mutual mistake of fact and that the Compañía Azucarera del Este should pay to the plaintiffs the sum of $26,389.20 with interest at 6 per cent per annum from August 30, 1910, when the complaint was filed.

FRAUD.—The existence of fraud has not been proved in this case.

CORPORATIONS—STOCKHOLDERS.—The mere fact that some of the stockholders of a corporation are also stockholders in other corporations does not render the corporation responsible, as a legal entity, for the acts of one of its stockholders as a member of another corporation.

ON REHEARING.

REHEARING — GENERAL DENIAL — ONUS PROBANDI — PLEADING — NOTICE TO PURCHASERS—CORPORATIONS.—The motion for a rehearing is based on the fact that the allegation of the complaint to the effect that The Yabucoa Sugar Company and Toro, Fabián & Company were continuators of the Compañía Azucarera

del Este was not disputed, and that from the registry it appeared that the whole purchase price had not been paid and that, therefore, the subsequent purchasers were responsible for the amount remaining unpaid. *Held:* That with respect to the first ground the general denial of the defendants imposed upon the plaintiffs the burden of proving all the allegations of the complaint, and with, respect to the second ground that as it was not raised in the trial court or in this court on appeal, it cannot be pleaded for the first time in the motion for a rehearing; moreover, there was no entry made in the registry with respect to the amount remaining unpaid to serve as a notice to subsequent purchasers.

The facts are stated in the opinion.

*Messrs. Alvarez Nava* and *Domínguez* for appellants.

*Mr. José E. Benedicto* for respondents.

MR. JUSTICE WOLF delivered the opinion of the court.

When Don Cristóbal Vallecillo died in 1897, his widow and children, the latter principally minors, discovered that there was a mortgage on the property "Mercedita" and two other farms in favor of the Banco Territorial y Agrícola, executed in 1895, in the sum of sixty-five thousand *pesos*, which with interest at nine per cent amounted to one hundred and eighteen thousand thirty-two *pesos* and fifty-two *centavos*, and this mortgage debt was to be paid in thirty semi-annual instalments, of which only four instalments had been paid at the death of Don Cristóbal.

The heirs not being able to meet these debts and others due to Don Juan Beltrán and Don Roberto Graham, and being pressed by their creditors, and the said bank having commenced judicial proceedings for the recovery of the amount, the said heirs decided to sell the property "Mercedita" and others; and, on October 2, 1900, made a contract with Don Rafael Fabián, Don Enrique Delgado, Don Conrado Palau and others, by which they agreed, within one month, to sell the said farm to the firm Compañía Azucarera del Este, which company the said gentlemen were about to organize for the purpose of exploiting the said "Mercedita" and other properties. The price agreed upon for the sale was then fixed at $120,000 and £3,709–17–3, from which there was to be deducted the amount that the Succession Vallecillo should be shown to

owe (*resulta adeudando*) the Banco Territorial y Agrícola,
amounting to 90,735 provincial *pesos* and 79 *centavos*, equiva-
lent to $54,032.27 according to the reckoning or liquidation
made the same day. This reckoning was made by the bank
and furnished to the contracting parties.

On the 30th day of the same month the Succession Valle-
cillo definitely conveyed to the Compañía Azucarera del Este
the farm "Mercedita" and other property, composed of about
870 acres, for the sum agreed upon, which made, taking the
dollars and pounds together, a total of $138,585.30. The deed
recites that certain sums were to be deducted and paid by
the company to various persons, including the debt due to
the bank, all of these persons being creditors of the Succession
Vallecillo. The particular clause relating to the payment to
the bank reads as follows:

"From this amount (namely, the $138,585.30 set forth in the con-
tract as the consideration or the price of the sale) there should first
be deducted the sum of $54,032.27, which is the amount of the mort-
gage and the interest thereon and which encumbers the first property
sold according to the liquidation of September 30 last past and which
the vendee company retains (*se reserva*) to pay it to the creditor,
namely, the Banco Territorial y Agrícola, of this Island."

The other sums deducted were due to other creditors and
were to be turned over to them by the grantee company.

Several months after this purchase the Compañía Azuca-
rera del Este needed money to carry on the work of the farm
or plant "Mercedita," and having sought this money from
the bank the latter refused to accept a second mortgage on
the property because their charter or rules forbade it, but
agreed to lend the amount sought on a first mortgage, taking
up the Vallecillo mortgage and making a new mortgage in-
cluding the desired new sum of money and the amount neces-
sary to cancel the old or the Vallecillo mortgage.

This new contract or mortgage finally took place on August
31, 1901, and the liquidation made as of July 30, 1901, showed

that the amount necessary to settle the Vallecillo mortgage debt was $27,643.07. In other words, the amount that would have been needed in October, 1900, the time of the sale, to discharge the mortgage debt would have been even less than $27,643.07, allowing for the running of interest. So that it may be said, speaking rough'y, that in October, 1900, instead of $54,032.27 being necessary to discharge the debt only half that amount was needed.

The Vallecillo mortgage by its terms ran to some time in 1910. This suit was brought on August 30, 1910, in which the foregoing facts were substantially set forth, and in addition thereto the complainants charged that the defendants, or some of them, had fraudulently induced the complainants to believe that the amount due to the company at the time of the sale was some fifty-four thousand dollars instead of being about twenty-seven thousand dollars. The reason why we say "some of the defendants" is because the property "Mercedita" was subsequently sold to other firms and the suit is brought against all of them. The fraud was practically only charged against the Compañía Azucarera del Este. The court below found that the company had been guilty of fraud and had deceived the complainants, and ordered the payment of $26,839.27 to be paid to the complainants with interest from October 30, 1900. The sum so awarded by the court is the difference between the $54,032.27 and the amount actually paid by the Compañía Azucarera del Este to the bank.

It is not shown from the evidence that the Compañía Azucarera del Este was actually guilty of fraud, but we think that the parties executed the contract of sale under a mutual mistake of fact. It was thought by both parties apparently that the whole sum of $54,032.27 would have to be paid to the bank. The defendants do not deny that only about $27,000 was due to the bank at the time of the sale, but what they do assert is that the contract was made in the form that it was because the defendants expected to have the use of the $54,000 odd during the whole term of the Vallecillo mortgage. They

also maintain that while they settled the debt with the bank the $27,000 was included in the new mortgage, and that in the transaction that followed they were still under the necessity of discharging an obligation of $27,000 with interest. Indeed we think that the defendants had some idea that they were paying the whole $54,000, but such evidently is not the fact.

Let us look at the contract itself. The consideration recited therein is $138,585.30. In return for this consideration the defendants received the whole mortgaged property and some other farms. It must be assumed, and indeed it is admitted by the defendants, that the actual value of the property was the amount recited in the deed. The defendants likewise admit that while the transaction was not a particularly good one at the time it turned out to be a very good piece of business. In order apparently that no obligations against the property might continue to exist which they themselves could not discharge they kept various sums to pay creditors, including the Territorial Bank. To accept the theory of the defendants that the interest was the *nueces* (kernel) of the contract, as one of them said, would be to invest the transaction with the character of a fraud, which we have already found not to be the fact; in other words, if the defendants were mentally reserving the sum of $27,000 and reciting that they were paying $138,000 and only turning over the equivalent of $111,000, it would have been a trick of figures on their part and hence a fraud. There would have been a great lack of frankness in not putting the consideration at $111,000. The contract of the defendant company was to reserve the money for the payment of the debt to the bank, and when they found that this debt was only $27,000 instead of $54,000 they became indebted or obligated to the complainants in the amount of the difference. In like manner, if they had found that the debt to Beltrán or Graham was less than the amount specified in the deed they would have been under equal obligations to return the same to the complainants. It may be urged that the defendants might not have entered

into the contract if they had thought that they would be immediately obliged to pay $27,000 more to the complainants; but taking the contract as it stands we think it can be deduced from the wording thereof that the defendants intended to pay to the complainants $138,000 or its equivalent, and that when it was discovered that only $27,000 of the $54,000 reserved was necessary the remaining $27,000 belonged to the complainants.

However, while the defendants may be considered to have begun payments of interest on $27,000 by reason of the new transaction with the bank, which interest they would not otherwise have had to pay, nevertheless if the $54,000 had actually been due, the defendants would have had to pay $27,000 thereof within half of the remaining time that the mortgage had to run; but, on the other hand, for the latter half of the period of the contract the defendants would also have been under the obligation to pay another $27,000 which, in point of fact, they never paid; so that, as the amount that was due to the bank and the amount that the company retained were practically equal, the interest that the defendants may have had to pay during the first portion of the period is counterbalanced by the interest that they were saved in the last part of the period due to the fact that they never had to pay the second $27,000 to the bank.

The defendants raised some legal objections that the action was for the recovery of money unduly paid and which ought to be refunded, and that the court below in its findings based the recovery of the complainants on sections 1796 and 1797 of the Civil Code. The complaint, however, does not proceed on that theory but simply is a suit to recover some money which the complainants say the defendants owed them. If there is any change in the trial court's theory it could not possibly injure the defendants because the facts of the case are undisputed.

We do not think, however, under all the circumstances of the case that the defendants should be required to pay interest

from October, 1900. The complainants are not entirely blameless in the matter inasmuch as it was easily within their power to have found out the state of their debt with the bank and to have previously demanded the payment of the debt of the Compañía Azucarera del Este. They did not 'do so, and therefore we think that the recovery of interest should be limited to the time of the filing of the suit.

Although in this case the action was also brought against the corporations Yabucoa Sugar Company and Toro, Fabián & Co., the former of these having purchased from the Compañía Azucarera del Este the property referred to in the complaint which was presented in this case, and the latter having also bought under conventional redemption from the Yabucoa Sugar Company, which was not due at the date the suit was brought, and said corporations were also adjudged by the lower court to make payment of the sum specified in the judgment. However, the only finding made against them, that some of their partners were also members of the Compañía Azucarera del Este, which company had entered into a contract with the plaintiffs herein, are not facts sufficient to establish a liability on their part to make the aforesaid payment ordered by the court, inasmuch as said companies cannot be held liable in their corporate capacity for acts which might be executed by some of their partners while they were members of another firm or corporation, and therefore they should not be included in the judgment.

With these modifications the judgment must be affirmed.

*Judgment modified and affirmed.*

Justices del Toro and Aldrey concurred.

Mr. Justice MacLeary made the following statement: "I think that the judgment of the court below should be affirmed *in toto* as rendered."

Mr. Chief Justice Hernández took no part in the decision of this case.

A motion for a rehearing having been filed later, Mr. Jus-

tice Wolf delivered the following opinion of the court on April 4, 1913.

The respondents urge two grounds for a rehearing. The first is substantially that the allegation of the complaint to the effect that the Yabucoa Sugar Company and Toro, Fabián & Co., were continuators of the Compañía Azucarera del Este was never seriously disputed by the appellants. However, the appellants filed a general denial to the complaint putting the complainants to their proof; they also specifically asserted that they were purchasers and received only a part of the land and under restrictions. Moreover, the specific point was raised in a motion for a new trial.

The second ground for a reconsideration is that as the whole purchase price was not paid by the appellant, the Compañía Azucarera del Este, and the deed of conveyance showed that fact, the record of that deed in the registry of property made the other appellants responsible as subsequent purchasers. In answer to this it may be pointed out that the deed did not clearly show that a part of the purchase price was retained and in fact that anything except a novation took place. It took an analysis of the document and the law to arrive at the conclusion that a part of the purchase price was withheld, if at all. Indeed the basis of the opinion is that when the Compañía Azucarera del Este found that not so much was due to the bank as it anticipated it became its duty to pay to respondents. However, the evidence of the defendant, as it appears in the statement of facts, does not show that any entry was made in the registry as to the sum owned by the Compañía Azucarera as part of the purchase price in such a manner that it constituted a notice to subsequent purchasers who are the other defendants in this case. Furthermore this theory in regard to the notice from the registry is raised for the first time on this motion for reconsideration. The complaint gave the defendants no notice of such a claim. The theory of the trial court was entirely different and there was no suggestion other than that two of

the defendants were principally composed of the same direc-
tors as the Compañía Azucarera and were continuators of the
latter. No such theory was advanced in the hearing in this
court until now. The motion must be denied.

*Rehearing denied.*

Justices del Toro and Aldrey concurred.

Mr. Justice MacLeary dissented.

Mr. Chief Justice Hernández took no part in the decision
of this case.